UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HERMAN P. ROUSE,

                Plaintiff,

                                                          DECISION AND ORDER
v.                                                      09-CV-0557-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

## **INTRODUCTION**

Plaintiff Herman P. Rouse ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the Commissioner of Social Security's ("the Commissioner") final decision finding that he was not entitled to Disability Insurance and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. The plaintiff claims he is disabled due to herniated discs, foot deformation, knee pain, a torn right shoulder, and depression. The Commissioner found that the plaintiff was not disabled because, although he was not capable of performing any past relevant work, he could perform light work that exists in significant numbers in the national economy. A vocational expert found the plaintiff could still perform the occupations of packer, inspector packer, and fruit cutter. (Tr. 27-28). On December 23, 2009, both the plaintiff and the Commissioner moved for judgment on the pleadings. For the reasons stated, the Commissioner's motion for judgment on the pleadings is granted and petitioner's motion is denied.

**BACKGROUND**

On March 30, 2005, the plaintiff applied for disability benefits and SSI claiming that he has been unable to work as of November 6, 2005. The plaintiff's application was denied. The plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ), which took place on November 15, 2007 before ALJ Bruce Mazzarella. In a decision dated January 14, 2008, ALJ Mazzarella found that the plaintiff was not disabled because his residual functional capacity (RFC) was consistent with light work that exists in significant numbers in the national economy such as a packer, inspector packer, and fruit cutter.

The plaintiff claims he is disabled due to herniated discs, foot deformation, knee pain, a torn right shoulder, and depression. (Tr. 132). The plaintiff was 54 years old on the date of the Commissioner's final decision. He completed the eighth grade and was able to communicate and read in English. (Tr. 132, 138, 496). Between 1980 to 2003, the plaintiff worked in janitorial maintenance, as a construction laborer, for a tree service, in a hose factory, and as a dishwasher; farm hand, and mechanic. (Tr. 83-84, 494-96). He has been unemployed since June of 2003.

The plaintiff cooked and shopped for groceries, dressed and bathed himself, took medications on his own, watched television, listened to the radio, and cared for a puppy. (Tr. 525-26, 533). The plaintiff walked one mile every day to and from his brother's house. (Tr. 529). Plaintiff state that his sister-in-law did his housework, helped him keep track of his appointments, and sometimes picked up his prescription medications. (Tr. 525, 533).

The plaintiff testified his worst condition was his back problem, and could no

longer "lift anymore." (Tr. 498). He attested he could not do anything due to constant pain, medication had helped his pain "a little bit," and walking/standing made the pain worse. (Tr 501-02, 505-07). The plaintiff claimed he used a cane when his pain got worse, and the last time he used the cane was six months prior to his hearing. (Tr. 508).

The plaintiff first stated his neck pain interfered with his ability to work around 2006, then corrected himself and said the disabling neck pain began in 2003 as a result of cutting firewood. (Tr. 516-18). The plaintiff's first and second toes of his left foot and the fourth toe of his right foot were amputated as a result of injuries. (Tr. 273, 279). He claimed phantom pain from his amputated toes worsened since 1996, and caused him to lose balance. (Tr. 519-20). He received no treatment for his toe condition, and wore no special inserts or special shoes. (Tr. 519-20). The plaintiff stated that he had knee pain but was not receiving treatment for his knee and used no assistive devices to walk. (Tr. 520). The plaintiff testified to being suicidal, although he had not been hospitalized for any mental problems other than when he was younger, and had never been to the emergency room for suicidal tendencies. (Tr. 521).

On April 22, 2003, Dr. Bruce MacKellar submitted a medical report employability assessment to the New York State Office of Temporary and Disability Assistance stating the plaintiff was "unable to work due to back problems, knee problems, [and] loss of toes." (Tr. 305). Dr. MacKellar noted the plaintiff was moderately limited with sitting, and very limited with walking, standing, lifting-carrying, pushing, pulling, bending, and climbing. (Tr. 305). There was no evidence of limitations with his mental functioning. (Tr. 305).

3

A computerized axial tomography (CAT) scan of the plaintiff's lumbosacral spine, performed on December 18, 2003, showed slight spinal stenosis and mild generalized annular disc bulge, but no identifiable herniations. (Tr. 304). On January 5, 2004, Dr. MacKellar diagnosed the plaintiff with low back pain, noting mildly herniated disks on the CAT scan. (Tr. 303). Dr. MacKellar ordered a magnetic resonance imaging (MRI), performed on January 23, 2004, which revealed small disc bulges from L1-2 through L4-5 without significant mass effect and with a mild degree of bilateral neural foraminal narrowing at the L3-4 and L4-5 levels, a posterior annular tear at the L1-2 level, but no discreet herniations. (Tr. 302-03). In the subjective portion of the examination report, Dr. MacKellar wrote than the plaintiff had "significant abnormality including multiple small disk herniations at various levels," he assessed "[l]ow back pain with potentially herniated disk," and recommended that the plaintiff not resume work and that he refrain from any significant lifting. (Tr. 301).

Neurosurgeon Dr. Robert Bakos examined the plaintiff on June 2, 2004. (Tr. 223-24). Dr. Bakos agreed that the plaintiff's January 2004 MRI showed some bulging disks, but concluded that the plaintiff's symptoms were not attributable to any nerve root compression indentified on the MRI. Dr. Bakos referred the plaintiff for an electromyogram (EMG) and nerve conduction studies of the lower extremities, which came back essentially normal, although a very mild lower lumbar/sacral radiculopathy below the detection threshold of testing was a possibility. (Tr. 221).

On July 8 and October 12, 2004, Dr. John Cusick performed internal consultative examinations of the plaintiff. He found the plaintiff was in no acute distress, his gait was normal, he could walk on his heels and toes and rise out of a chair without difficulty, as

4

well as fully squat. (Tr. 273-74, 279-80). The plaintiff's cervical and lumbar spines showed full flexion, extension, lateral flexion, and full rotary movement; his straight leg raising was 10 degrees bilaterally in the supine position, and 90 degrees in the sitting position without pain; his extremities had full range of motion; in addition, his affect was normal and he denied suicidal ideation. (Tr. 275-76, 280-81). Dr. Cusick diagnosed the plaintiff with degenerative arthritis of the back and knees, and depression. (Tr. 276, 281). He further concluded the plaintiff was amplifying his symptoms. (Tr. 276, 281).

Also on July 8, 2004, psychologist Dr. John Thomassen performed a psychiatric consultative evaluation on the plaintiff. (Tr. 213-17). Dr. Thomassen diagnosed the plaintiff with anxiety disorder, dysthymic disorder, cannabis abuse, and alcohol dependence in full sustained remission. (Tr. 216). Dr. Thomassen noted that the plaintiff's allegations on psychiatric disability did not appear to be fully consistent with his examination findings. (Tr. 216).

State Agency psychiatrist Dr. Hillary Tzetso prepared a psychiatric review technique and mental residual functional capacity assessment on the plaintiff on July 21, 2004. (Tr. 226-44). Dr. Tzetso opined that the plaintiff had a mild limitation for daily activities, moderate difficulties maintaining social function and with concentration, persistence, or pace, and no episodes of decompensation. (Tr. 236). Dr. Tzetso concluded the plaintiff should be able to understand and follow work directions in a low contact work setting, maintain attention for such tasks, relate adequately to a supervisor for such tasks, and use judgment to make work-related decisions. (Tr. 238, 243).

Dr. MacKellar examined the plaintiff on December 22, 2004, for shoulder pain, back pain, and depression. Shoulder x-rays revealed a normal study except for an

5

inferior protuberance from the distal clavicle. (Tr. 295-96). Dr. MacKellar ordered knee x-rays based on the plaintiff's complaints of knee pain, which showed no significant abnormalities of the knee joints. (Tr. 289).

The plaintiff attended sessions with therapist Jim Hunter from January 2005 through May 2006. (Tr. 375-95). The plaintiff missed three months of scheduled counseling sessions from September 8, 2005 to December 8, 2005; and Mr. Hunter commented the plaintiff "has an art at making excuses and always needs to get away from things." (Tr. 384, 413). The plaintiff was dis-enrolled from case management services effective October 5, 2006 because he was not compliant with treatment, had not attended sessions with therapist Hunter, and had not responded to several messages left at his door. (Tr. 346). The plaintiff was also discharged from individual therapy on February 12, 2007 for refusing further treatment. (Tr. 343).

On September 26, 2005, Dr. MacKellar examined the plaintiff for worsening neck pain, while his low back pain remained stable. (Tr. 370). Dr. Bakos re-examined the plaintiff for neck pain on February 22, 2006, and assessed the plaintiff had cervical spondylosis without myelopathy, and could benefit from a C6-7 decompressive laminectomy, which he underwent on May 12, 2006. (Tr. 350-52, 355-56). On June 28, 2006, Dr. Bakos noted that the plaintiff's preoperative symptoms of pain had "completely resolved," and that the plaintiff had done "excellently" in the postoperative period. (Tr. 348). Dr. MacKellar re-examined the plaintiff on July 17, 2007 for radiating neck and back pain, and stated that the plaintiff remained disabled. (Tr. 362).

The ALJ found that the plaintiff had severe impairments: chronic back discomfort, neck pain, loss of hearing, depression, anxiety, cannabis abuse, and a history of

6

amputated toes. (Tr. 21). Despite these impairments, the ALJ determined that the plaintiff retained the RFC to perform light work.[1] The ALJ found that the plaintiff was unable to perform any past relevant work; but given his age, education, work history, and RFC, he could perform other work existing in significant numbers in the national economy, such as a packer, inspector packer, and fruit cutter. (Tr. 27-28).

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and may set aside the Commissioner's decision only if it is based upon legal error or the findings of fact are not supported by substantial evidence. Substantial evidence is defined as "more than a mere scintilla," and evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Social Security regulations set forth a five-step sequential evaluation in making disability determinations. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the plaintiff is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the plaintiff has a "severe impairment" which significantly limits his physical or mental ability to do basic

---

[1] In accordance with SSR 83-10, light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds, and standing /walking for 6 hours of an 8-hours workday.

7

work activities. If the plaintiff suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the plaintiff has an impairment which meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. If the plaintiff has such an impairment, the Commissioner will consider him disabled. Assuming the plaintiff does not have a listed impairment, the fourth inquiry is whether he has the RFC to perform her past work. Finally, if the plaintiff cannot perform his past work, the Commissioner must determine whether the plaintiff is capable of performing other work which exists in the national economy. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g). The plaintiff bears the burden of proving the first four elements and the Commissioner bears the burden on the fifth element. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

Here, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 1, 2003, and he did suffer from severe impairments such as chronic back discomfort, neck pain, loss of hearing, depression, anxiety, cannabis abuse, and a history of amputated toes.[2] However, the plaintiffs impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.

Next, the ALJ found the plaintiff could sit, stand or walk for an eight-hour work day with only normal breaks and meal periods, as well as carry 20 pounds occasionally and 10 pounds frequently. (Tr. 22). Thus, the ALJ concluded the plaintiff retained the RFC to perform light work; with additional limitations of occasional stooping, crouching,

---

[2] The ALJ concluded that the plaintiff's alleged knee, shoulder, and skin impairments were not severe, and his cannabis abuse was not material to the finding of disability. (Tr. 21).

8

kneeling, and climbing stairs; avoiding excessively noisy work environments; and being limited to simple, repetitive, and routine tasks which involve low contact with the general public and should not involve a lot of cooperation with fellow workers. (Tr. 22). Given the plaintiff's RFC, the ALJ found he was not able to perform any past relevant work. (Tr. 26).

The ALJ then considered vocational expert testimony that, given the plaintiff's age, education, and work history, he could still perform the occupations of packer, inspector packer, and fruit cutter, which existed in significant numbers in the local and national economy.[3] (Tr. 27-28). Considering all these factors along the with plaintiff's RFC, the ALJ applied corresponding Medical-Vocational Rule 202.11, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework for decision-making to find that the plaintiff could make an adjustment to work in significant numbers in the national economy. (Tr. 27-28). Accordingly, the ALJ found the plaintiff not disabled, and denied his claims for benefits. (Tr. 28).

## II. The ALJ Properly Evaluated the Treating Source Opinion

The plaintiff argues the ALJ failed to accord adequate weight to the opinion of his treating physician, Dr. Bruce MacKellar. However, treating physician opinions are entitled to controlling weight only when they are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other

---

[3] Vocational expert James Phillips stated the plaintiff could perform unskilled light work as a packer, with 807 and 356,000 jobs locally and nationally, respectively; inspector packer, with 850 and 215,000 jobs locally and nationally; and fruit cutter, with 400 and 67,000 jobs locally and nationally. (Tr. 542-43).

9

substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. Therefore, the ALJ will deny controlling weight where the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Here, the ALJ considered, but assigned Dr. MacKellar's January 2004 report "not much weight at all," as the doctor based his very limited restrictions on herniated discs, a finding which was unsupported and contradicted by objective evidence of the record. (Tr. 26, 28). Not one of the imaging studies revealed disc herniations, including CAT scans, an EMG nerve conduction study, and MRIs performed as recently as 2008. (Tr. 26, 220-21, 297-304, 474). Additionally, Dr. Bakos identified bulging, but not herniated, discs and concluded that the plaintiff's symptoms were not attributable to nerve root compression.[4] (Tr. 224).

Dr. MacKellar also diagnosed the plaintiff in April 2003 as totally disabled without the benefit of any diagnostic studies to support his conclusion. (Tr. 305-06). His diagnostic assessment was based solely on the plaintiff's subjective complaints and prior to conducting any EMG or imaging studies. Additionally, the plaintiff continued to perform exertional work for another few months after Dr. MacKellar's report. (Tr, 57, 69, 119, 494). Dr. MacKellar limited the plaintiff's work activities to "no lifting, bending, stooping, prolonged sitting, or walking." (Tr. 300). By contrast, consultative examiner Dr. Cusick found the plaintiff "capable of sitting, standing, walking, lifting, carrying,

---

[4] The plaintiff postulates Dr. MacKellar did not commit any medical error, but instead he used the terms "disk bulge" and "mildly herniated disk" interchangeably. However, the plaintiff offers no evidence in support of this claim.

handling objects, hearing, speaking, and traveling," on two occasions.  (Tr. 276, 281).
The inconsistencies of Dr. MacKellar's January 2004 reports coupled with other medical evidence of record, including the findings and conclusions of consultative examiner Dr. Cusick, contributed substantial evidence supporting the ALJ's decisions to accord Dr. Cusick's opinion "significant weight" and Dr. MacKellar's opinion "not much weight at all."  (Tr. 23-24, 26).

The plaintiff also argues Dr. Cusick's reports are insufficient to sustain a finding that he is not disabled.  The plaintiff challenges Dr. Cusick's medical source statements by contending he failed to quantify the plaintiff's ability to perform work-related activities. It is well established that consultative examiner opinions may constitute substantial evidence.[5]  *See Richardson v. Perales*, 402 U.S. 389, 402 (1971).  Dr. Cusick's negative findings on examination support his assessment that the plaintiff was capable of sitting, standing, walking, lifting, carrying, and handling objects without limitation.  (Tr. 276, 281).  Therefore, Dr. Cusick's assessment supports the ALJ's finding that the plaintiff can perform work at the light exertional level.

The plaintiff further contends the ALJ should have found Dr. Cusick's report of herniated disks equally egregious to Dr. MacKellar's description of herniated disks.  Yet, Dr. Cusick merely recounted information provided to him by the plaintiff regarding the history of his current condition, and neither diagnosed nor observed clinical findings

---

[5] *Richardson*, 402 U.S. at 402 (The written report of an examining physician, "despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant."); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence.").

consistent with herniated discs. (Tr. 272, 278). Thus, the plaintiff's contention that Dr. Cusick's reports should not constitute substantial evidence to support the hearing decision is without merit.

### III. The ALJ Properly Discounted the Plaintiff's Subjective Complaints

The plaintiff claims the ALJ failed to give adequate weight to the plaintiff's statements regarding his symptoms, or adequate reasons for rejecting those statements. The ALJ considered the plaintiff's subjective complaints and alleged functional limitations; however, subjective complaints alone cannot support a finding of disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). It is well within the discretion of the Commissioner to evaluate the credibility of the plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of his symptomatology. *Mimms v. Secretary of Health and Human Servs.*, 750 F.2d 180, 185-86 (2d Cir. 1984).

Here, the objective medical evidence did not corroborate the plaintiff's subjective complaints to the disabling extent alleged. In fact, both consultative examiners, Drs. Cusick and Thomassen, independently assessed the plaintiff as exaggerating his symptoms. (Tr. 216, 276, 281). Additionally, the plaintiff's reported activities of cooking, washing laundry, shopping, walking one mile per day and taking public transportation were inconsistent with his alleged symptoms. (Tr. 23, 215, 273, 279).

Furthermore, there was a multitude of evidence in the record undermining the plaintiff's credibility:

12

On July 8, 2004, Dr. Cusick noted the plaintiff denied "street drug use," yet on that same day he told Dr. Thomassen he used cannabis from age 23 until the day before the exam. (Tr. 213, 273).

During his hearing, the plaintiff first stated the onset of his neck problem began in the 1990's, and then stated he injured his neck in 2003 cutting firewood. (Tr. 25). Yet, he only first complained of neck pain to Dr. MacKellar in September 2005, and never mentioned it during his consultative examination with Dr. Cusick. (Tr. 206-09, 272-82, 305-06, 370).

The plaintiff went without treatment for eight months from November 2006 to July 2007, missing numerous medical appointments and home visits. (Tr. 218, 291, 346, 369, 370, 406, 413, 430, 435). However, the plaintiff's failure to seek treatment during this time was inconsistent with the degree of pain he alleged. (Tr. 25). The plaintiff claimed he had no phone or transportation, yet this was refuted by evidence showing he walked one mile to his brother's house daily, and had other transportation arrangements available. (Tr. 411, 417, 426, 435, 437, 500, 511-12, 529). Furthermore, after eight months of no treatment, the plaintiff again complained of neck pain to Dr. MacKellar in July 2007. This was after the Agency contacted Dr. MacKellar in June 2007 in connection with the plaintiff's SSI claim. (Tr. 327-39, 362-63).

The ALJ found the plaintiff's variable work history showed he was not well-motivated to work. (Tr. 24). He neither sought vocational rehabilitation, nor attempted to return to work in any capacity. (Tr. 24).

When the plaintiff failed to cancel a counseling session in order to go hunting with his uncle, his therapist, social worker Jim Hunter, commented that the plaintiff "has an art at making excuses and always needs to get away from things." (Tr. 413).

In light of the ALJ's findings of the plaintiffs amplified symptoms, inconsistent statements, numerous missed medical and counseling appointments, poor work history, incoherent testimony regarding the onset of his neck ailment, and an eight-month lapse in medical treatment resumed only after the State requested a status report from his doctor, it was within the ALJ's discretion to reject the plaintiff's subjective complaints in

favor of evidence indicating he was capable of performing light work.  Thus, the ALJ relied on substantial evidence when he determined the plaintiff's subjective complaints of pain to the disabling degree alleged were not credible.

## I. This Case is Distinguishable from *Taylor v. Astrue*

The plaintiff argues that the facts in this matter are very similar to those in *Taylor v. Astrue*, 2009 WL 2390762 (W.D.N.Y. 2009), and that the outcome should be the same. In *Taylor*, this Court found the ALJ erred by rejecting the opinions of the claimant's treating physicians as inconsistent with the claimant's MRI results. Although the results revealed no evidence of disc herniation or nerve root impairment, they did reveal joint spurs on the claimant's cervical spine that cause neural foraminal stenosis. Because the MRI results provided objective evidence to support the claimant's subjective complaints of pain, they supported rather than contradicted the conclusions of the claimant's treating physicians.

However, the lack of a credibility assessment in *Taylor* readily distinguishes it from the ALJ's adverse credibility assessment of the plaintiff and his treating physician, Dr. MacKellar. In *Taylor*, the ALJ had not found the claimant lacking in credibility; therefore, the treating physician's opinion should not have been rejected as the Court found it did not contradict the claimant's testimony. In contrast, the ALJ here made a distinct adverse credibility finding against both the plaintiff and Dr. MacKellar, as outlined above. Thus, the credibility findings against the plaintiff and Dr. MacKellar, coupled with medical findings and other evidence of record, show the ALJ relied on substantial evidence to find the plaintiff not disabled.

## **CONCLUSION**

For the reasons stated, the ALJ properly found that the plaintiff was not disabled because he retained the ability to perform light work that exists in significant numbers in the national economy. The Court grants the Commissioner's motion for judgment on the pleadings and denies plaintiff's motion for judgment on the pleadings.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner and to take all steps necessary to close the case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: December 16, 2010